UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMERSON ELECTRIC CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:12CV1578 JAR |
| | ) |
| PETER RAMOS YEO, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Renewed Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction. [ECF No. 37][1] The Motion is fully briefed and oral argument was held on the Motion on December 19, 2012. For the reasons set forth below, the Motion will be denied.

**Discussion**

On August 30, 2012, Plaintiff Emerson Electric Company ("Emerson") filed its Petition and Motion for Temporary Restraining Order against Defendant Ramos Yeo ("Defendant") in the Circuit Court of Saint Louis County, Missouri. Emerson alleges Defendant, a former employee of its indirect subsidiary Astec International Ltd., ROHQ ("Astec"), is competing against Emerson in violation of a non-compete clause included in a stock option agreement he signed with Emerson ("2011 Stock Option Agreement" or "Agreement"). Emerson filed suit in the Circuit Court of Saint Louis County, Missouri, based on a forum selection clause in the Agreement. This matter was removed to this Court on September 4, 2012. On September 7, 2012, this Court entered its

---

[1]Defendant originally filed his Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction on September 5, 2012. (Doc. No. 18) On September 14, 2012, the Court ordered this matter stayed for a period of fourteen days and denied Defendant's Motion without prejudice. (Doc. No. 29)

Temporary Restraining Order. (Doc. No. 26) Defendant renewed his Motion to Dismiss on October 8, 2012.

In support of his motion to dismiss, Defendant argues that the 2011 Stock Option Agreement is not supported by valid and sufficient consideration because the stock option grant was an illusory promise. "The phrase 'illusory promise' means 'words in promissory form that promise nothing.' An illusory promise is not a promise at all and cannot act as consideration; therefore no contract is formed." Cordry v. Vanderbilt Mortgage & Finance, Inc., 445 F.3d 1106, 1110 (8th Cir. 2006) (quoting Magruder Quarry & Co. v. Briscoe, 83 S.W.3d 647, 650 (Mo.Ct.App. 2002)). See also, Am. Laminates, Inc. v. J.S. Latta Co., 980 S.W.2d 12, 23 (Mo.Ct.App.1998) ("Retaining the right to cancel a contract or to avoid one's promise is an unenforceable, illusory promise."); Cooper v. Jensen, 448 S.W.2d 308, 314 (Mo.Ct.App.1969) (A contract is illusory where a party "had it always in his power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee.") Defendant states that under the Agreement, Emerson retained the right to terminate him at any time, for any reason. Under the terms of the Stock Option Plan, if Emerson terminated Defendant's employment during the year before his options vested, he was not entitled to exercise any options. As a result, Emerson retained the ability to "relieve itself of its promises," making the stock option grant illusory and the Agreement unenforceable. Frye v. Speedway Chevrolet Cadillac, 321 S.W.2d 429, 442 (Mo.Ct.App. 2010); Fenberg v. Goggin, 800 S.W.2d 132, 136 (Mo.Ct.App. 1990). (Memorandum in Support of Renewed Motion to Dismiss, Doc. No. 38, pp. 3-8)

Emerson responds that the fact that it had the right to terminate Defendant's employment does not make the stock option grant illusory, and that under the Agreement, Defendant had the right to immediately exercise all of his outstanding options, regardless of whether they had vested, in the

event of a "Change in Control."[2] Additionally, if Defendant died at any time during his employment, his legatee(s), personal representatives or distributees could exercise all of his outstanding options, regardless of whether they were vested.[3] (Plaintiff's Opposition to Defendant's Renewed Motion to Dismiss, Doc. No. 57, p. 6) This benefit acted in a manner similar to a life insurance benefit providing security upon death to the Defendant. Both of these circumstances were outside the control of Emerson. In reply, Defendant maintains that his right to exercise his options remained contingent on Emerson not terminating his employment prior to either of these events occurring. (Defendant's Reply in Support of Renewed Motion to Dismiss, Doc. No. 60, p. 7) Because Emerson always retained the right to relieve itself of its promise, the stock option grant remained illusory.

If this were true, then under the circumstances of employment at-will there could never be adequate consideration because an employer always has the power to terminate its employee. The Court will not go so far as to adopt Defendant's position. "The tendency of the law is to uphold the contract by finding the promise was not illusory when it appears that the parties intended a contract." Magruder, 83 S.W.3d at 650. Moreover, courts have found that "[e]ven slight consideration is sufficient to support a promise." Moore v. Seabaugh, 684 S.W.2d 492, 496 (Mo.Ct.App.1984). As discussed above, under the terms of the Agreement, Defendant had the right to exercise his options, regardless of whether they had vested, in the event of a Change of Control or upon his death. Because Emerson's performance rested unconditionally on the occurrence of either of these two

---

[2]Under § 2(i) of the Agreement and § 9 of the Plan, a "Change in Control" includes "[t]he purchase or other acquisition (other than from the Company) by any person, entity or group of persons, within the meaning of Section 13(d) or 14(d) of the Securities Exchange Act of 1934, as amended (the '1934 Act') . . . of 20% or more of either the then outstanding shares of Common Stock or the combined voting power of the Company's then-outstanding voting securities entitled to vote in the election of directors." (Doc. No. 1-1, pp. 39, 47)

[3]See § 11 of the Plan (Doc. No. 1-1, p. 49)

events, and reading the Agreement as a whole, the Court finds that the stock option grant is not illusory.

In further support of his motion to dismiss, Defendant argues that even if the stock option grant was not entirely illusory, the non-compete clause in the Agreement is unenforceable due to the lack of adequate consideration. Defendant relies on Sturgis Equipment Co., Inc. v. Falcon Industrial Sales Co., 930 S.W.2d 14 (Mo.Ct.App. 1996), where the Missouri Court of Appeals held that the consideration of agreeing to buy back the employee's stock, without more, was insufficient to support the broad non-complete clause at issue there. Id. at 17. Defendant states the only consideration provided for in the Agreement is the grant of options, and where consideration is one of the terms of the contract itself, the Court cannot look outside the contract to find adequate consideration. Kassebaum v. Kassebaum, 42 S.W. 3d 685, 694 (Mo.Ct.App. 2001).

The Sturgis decision does not stand for the proposition that a stock purchase agreement containing a non-compete clause can never, as a matter of law, be supported by adequate consideration. Mayer Hoffman McCann, P.C. v. Barton, 614 F.3d 893, 904 (8th Cir. 2010). Rather, the decision recognized the non-compete clause might have been enforced if the stock purchase agreement had provided sufficient consideration, such as stating that the purpose of the non-compete clause was to protect any special interest of the company. Id.

In examining the consideration supporting this non-compete clause, the Court is guided by general principles of contract construction. The Court reads the Agreement as a whole, and construes it from its four corners. See, Redwine v. Southwest Trust Co., N.A. , 2011 WL 4543958, at *10 (W.D. Mo. Sept. 30, 2011) ("Where parties to a contract have expressed their agreement in writing, the intent of the parties is to be determined from within the four-corners of the document."); Medicine Shoppe Intern., Inc. v. Stopa, 2008 WL 3538980, at *2 (E.D.Mo. August 11, 2008) ("The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give

- 4 -

effect to that intent. The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning.") (internal citations and quotations omitted); Gustin v. F.D.I.C., 835 F.Supp. 503, 507 (W.D. Mo. 1993) ("Unless the agreement is ambiguous, the intention of the parties and interpretation of the contract are for the court to determine from the four corners of the document.") (quoting Press Machinery Corp. v. Smith R.P.M. Corp., 727 F.2d 781, 784 (8th Cir.1984).

When Defendant signed the Agreement, he expressly agreed and acknowledged that the grant of stock options by Emerson was valid and "valuable consideration." The Agreement does not provide that the grant of stock options was the *sole* consideration. By signing the Agreement, Defendant further acknowledged he was entering into the Agreement "in consideration of the premises, and of the mutual agreements hereinafter set forth." The Agreement recognizes Defendant as a "key employee" of Emerson, and clearly contemplates that he would be privy to "confidential, proprietary and/or trade secret information of or relating to Emerson." Unlike in Sturgis, where the agreement at issue was an agreement to repurchase stock, and nothing else, the Agreement here was more involved, and clearly designed to protect confidential information that Defendant, as a key employee, had access to. After considering the Agreement as a whole, the Court finds that the stock options were granted to Defendant in consideration of his position with Emerson and in recognition of his role as a key employee, and that this constitutes sufficient consideration to support the non-compete clause.

Finally, Defendant argues the forum selection clause is unenforceable. Section 15 of the Stock Option Agreement provides that "any litigation arising out of, in connection with or concerning any aspect of [the] Agreement shall be conducted exclusively in the State or Federal courts in the State of Missouri," and that Defendant expressly consents to "the exclusive jurisdiction of said courts." In the Eighth Circuit, a forum selection clause will be enforced unless the party

seeking to avoid its application sustains a "heavy burden" to show the clause is unfair or unreasonable. See Servewell Plumbing, LLC v. Federal Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006).

Defendant focuses on his lack of minimum contacts with Missouri and the burdens he faces, as a resident of the Phillippines, in defending Emerson's suit in Missouri, including the travel costs, time difference, and ability to enforce orders from this Court in various Asian countries. "[A] party seeking to avoid his promise must demonstrate that proceeding in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." Servewell, 439 F.3d at 790 (internal citations and quotations omitted). The Court finds no basis for concluding that any expense and inconvenience to Defendant would deprive him of his day in court. See, e.g., M.B. Restaurants, Inc. v. CKE Restaurants, Inc., 183 F.3d 750 (8th Cir. 1999) (enforcing forum selection clause requiring litigation in Utah over plaintiff's objection that he could not afford to litigate there); Afram Carriers, Inc. v. Moeykens, 145 F.3d 298 (5th Cir. 1998) (enforcing Peruvian forum selection clause against financially destitute family of deceased security guard). Moreover, Defendant is an educated person and is presumed to have agreed to the forum selection clause knowingly and intelligently. It is neither unfair, unjust nor unreasonable to hold Defendant to his bargain and require him to defend this matter in this Court. Because the Court finds the forum selection clause valid and enforceable, the Court need not proceed to due process considerations. Whelan Security Company, Inc. v. Allen, 26 S.W.3d 592, 595 (Mo.Ct.App. 2000).

**Conclusion**

Based on the foregoing, the Court finds the Agreement, and the non-compete and forum selection clauses therein, is valid and enforceable as between the parties.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Renewed Motion to Dismiss for Failure to State a Claim and Lack of Personal Jurisdiction [37] is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone conference with the parties is set for **Thursday, January 3, 2013 at 11:00 a.m.** to discuss Defendant's Motion to Dissolve or Modify The Temporary Restraining Order. [ECF No. 39] as well as a scheduling order. The parties shall initiate the call with the Court at (314) 244-7560.

Dated this 28th day of December, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE